NOT FOR PUBLICATION                                                    (Document No. 18)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

_____
                                                    :
UNITED STATES ex rel. CHARLES       :
WILKINS and DARRYL WILLIS,          :
                                                    :
               Plaintiffs,              :         Civil No. 08-3425 (RBK/JS)
                                                    :
               v.                          :         **OPINION**
                                                    :
UNITED HEALTH GROUP, INC.,          :
AMERICHOICE, and AMERICHOICE   :
OF NEW JERSEY, INC.,                    :
                                                    :
             Defendants.              :
_____:

**KUGLER**, United States District Judge:

      This matter is a qui tam claim under the False Claims Act (FCA), 31 U.S.C. § 3729 et seq., arising out of alleged fraudulent claims to Medicare.  Presently before the Court is the Motion to Dismiss by Defendants United Health Group, Inc., AmeriChoice, and AmeriChoice of New Jersey, Inc. (collectively, "United Health") (Doc. No. 18).  Because the Court finds that Relators Charles Wilkins and Darryl Willis have failed to state a claim under the FCA, the Court grants the Motion and declines to exercise jurisdiction over the state law claims under 28 U.S.C. § 1367(c)(3).

**I.     BACKGROUND**

      United Health Group, Inc. is a health company that provides access to healthcare services

and resources.  AmeriChoice and AmeriChoice of New Jersey are subsidiaries of United Health Group.  Both AmeriChoice and AmeriChoice of New Jersey offer Medicare Advantage plans, which, among other things, permits the plans to submit claims to the United States Government for reimbursement.  The United Health Defendants offered a prescription drug plan (PDP), which in part required them to sign a contract with the Secretary of Health and Human Services agreeing to comply with the terms and conditions of payment provided under 42 U.S.C. § 1395w-112.

Relator Charles Wilkins began employment with United Health Group and AmeriCHoice in October of 2007 as a sales representative.  Relator Darryl Willis began employment with United Health Group and AmeriChoice in 2007 as the general manager for Medicare/Medicaid marketing and sales.  The bulk of the Amended Complaint catalogs Wilkins's tumultuous and short experience as a United Health employee.  He alleges that during his tenure, from October 2007 to April 2008, he observed a number of violations of Medicare and Medicaid regulations promulgated by the Centers for Medicare and Medicaid Services (CMS).

In brief, the Amended Complaint alleges eleven violations of relevant regulations: 1) United Health used marketing flyers that were not approved by CMS; 2) licensed sales agents engaged in marketing activities in the waiting room of clinics and doctors' offices; 3) nonlicensed individuals engaged in marketing activities; 4) United Health commonly used an excessive number of sales representatives at presentations in an attempt to "overwhelm the public"; 5) sales representatives asked persons to raise their hands at presentations if they were eligible for both Medicare and Medicaid; 6) marketing personnel chased people "up and down supermarkets" asking if they have Medicare/Medicaid; 7) engaged in door-to-door solicitation; 8)

gave out prizes at presentations in excess of $15; 9) gave illegal cash payments to providers to induce them to change Medicare and Medicaid eligible beneficiaries to AmeriChoice; 10) gave illegal kickbacks to doctors for obtaining the names of patients they could call and approach; and 11) failed to maintain a CMS compliance program.  Relator Wilkins alleges that he was terminated after bringing these violations to the attention of his supervisors.

      Thereafter on July 10, 2008, Wilkins and Willis brought suit in this Court in the name of the United States under the FCA and the qui tam provisions in 31 U.S.C. § 3730(b).  After the United States declined to intervene on May 26, 2009, Relators filed an Amended Complaint on August 5, 2009.  The Amended Complaint states one federal count over which this Court has original jurisdiction, and nine state law counts under this Court's supplemental jurisdiction.  The federal count is a violation of the FCA, 31 U.S.C. § 3729(a)(1)-(3).  Relators also allege a violation of New Jersey, Florida, Indiana, Michigan, Tennessee, Texas, and New York state laws related to United Health's alleged false claims.  Wilkins and Willis individually allege a violation of the New Jersey Conscientious Employee Protection Act, N.J. Stat. Ann. § 34:19-1 et seq.  United Health filed the present Motion on October 6, 2009.  All briefing is now complete and the matter is ripe for review.[1]

---

[1] As a general matter, some deficiencies exist in Relators' brief in opposition that warrant mention.  First, pursuant to Local Civil Rule 7.1(d)(2), Relators filed their brief out-of-time.  As the initial brief had a motion day of November 2, 2009, the opposition brief was due on or before October 19, 2009.  Without leave of the Court or without invoking the automatic extension under Local Civil Rule 7.1(d)(5), Relators filed their brief on November 2 – two weeks late.  See Doc. No. 21.  Nevertheless, since no prejudice appears to have arisen, the Court will consider the untimely filing.  Second, Relators' brief was three pages overlength as filed (and likely even more so given the non-12 point font in the footnotes throughout).  See L. Civ. R. 7.2(d) (12-point font brief in opposition must not exceed 30 pages and text and footnotes must be in same size type as used in text).  Relators did not seek leave of the Court for the overlength filing.  See L. Civ. R. 7.2(b).  The Court will overlook the minor deviation and accept the brief as filed.

**II.     STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for failure to state a claim upon which relief can be granted.  With a motion to dismiss, "'courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'"  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)).  In other words, a complaint survives a motion to dismiss if it contains sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).

In making this determination, a court must engage in a two part analysis.  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009); Fowler, 578 F.3d at 210-11.  First, the court must separate factual allegations from legal conclusions.  Iqbal, 129 S. Ct. at 1949.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.  Second, the court must determine whether the factual allegations are sufficient to show that the plaintiff has a "plausible claim for relief."  Id. at 1950.  Determining plausibility is a "context-specific task" that requires the court to "draw on its judicial experience and common sense."  Id.  A complaint cannot survive where a court can only infer that a claim is merely possible rather than plausible.  See id.

**III.    DISCUSSION**

United Health moves to dismiss the Amended Complaint on several grounds.  United Health argues that Relators have failed to state a plausible FCA claim because Relators have failed to plead the elements of a "false certification" claim, they have failed to plead any Anti-

4

Kickback violations, and have failed to adequately plead a conspiracy. Def. br. at 4-22. Alternatively, United Health asserts that Relators have failed to plead with sufficient particularity under Federal Rule of Civil Procedure Rule 9(b). Def. br. at 23. United Health also argues that if the Court accepts that Relators have failed to state a FCA claim, the Court should decline to exercise supplemental jurisdiction over the state law claims. Def. br. at 28.

      Relators counter that they have stated a sufficient FCA claim under an "express certification" theory because United Health expressly certified that it would comply with all CMS regulations, it did not do so, and it nevertheless submitted claims. Rel. br. at 15-19. They bolster their counterargument by asserting that recent amendments to the FCA under the Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. No. 111-21, 123 Stat. 1617 (2009), make stating a claim even easier. Rel. br. at 20. Relators separately argue that they have stated a FCA violation because of United Health's violation of the Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b), and that they have stated their claims with requisite particularity. Rel br. at 22, 25. Relators did not respond to United Health's assertion regarding the failings of the conspiracy claim.[2] The Court does not agree with Relators' arguments and finds that the FCA claim is deficient as a matter of law.[3] The Court further declines to exercise supplemental jurisdiction over the state law claims, and denies leave to amend.

---

[2] Because Relators otherwise failed to respond to United Health's challenges to the FCA conspiracy claim (and thus seemingly abandoned it), and because the Amended Complaint otherwise fails to allege an agreement to violate the FCA, Relators' claim under § 3729(a)(1)(C) fails and is dismissed.

[3] Because the Court finds that the FCA claim is faulty as pled, the analysis below does not reach United Health's challenge under Rule 9(b).

### A.     FCA & False Certification

Under the FCA, a person who knowingly presents a false or fraudulent claim for payment or approval, or knowingly makes, a false record or statement "material to" a false or fraudulent claim is liable to the United States.[4]  31 U.S.C. § 3729(a)(1)(A)-(B).  A person who conspires to commit a violation of the FCA is also liable.  § 3729(a)(1)(C).  At base, FCA liability arises when a person "'knowingly asks the Government to pay amounts it does not owe.'"  U.S. ex. rel Quinn v. Omnicare Inc., 382 F.3d 432, 438 (3d Cir. 2004) (quoting U.S. ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1311 (11th Cir. 2002)).  A private person (the relator) may bring a civil action in the name of the United States to enforce violations of § 3729 (a qui tam action), and may share a percentage of the relief.  31 U.S.C. § 3730(b), (d).

FCA violations are generally of two types: 1) factually false claims, and 2) legally false claims.  U.S. ex rel. Conner v. Salina Reg'l Health Ctr., Inc., 543 F.3d 1211, 1217 (10th Cir. 2008).  The former, which is not at issue here, is of the variety where a person misrepresents what if any goods and services were provided to the Government.  Id.  The latter, which is at issue, arises where the person certifies compliance with a statute or regulation that is a condition of Government payment, while knowing that no such compliance exists.  Id.  A legally false claim is known as the "false certification" theory of liability.  See Rodriguez v. Our Lady of Lourdes Med. Ctr., 552 F.3d 297, 303 (3d Cir. 2009), overruled in part on other grounds by U.S. ex rel. Eisenstein v. City of New York, New York, 129 S. Ct. 2230 (2009).

False certification liability comes in two forms: express and implied.  Id.  Under the

---

[4] The "material to" language was added by the FERA on May 20, 2009, during the pendency of this civil action.  The import of that change is addressed briefly below.

"express false certification theory," an entity is liable under the FCA for expressly certifying compliance with applicable regulations in connection with the receipt of funds.  Id.  Under the "implied false certification theory," an entity is liable for receiving funds (even where it has not expressly certified compliance with applicable regulations) merely because it has received Government funds without disclosing its violation of regulations that affect its eligibility for payment.  Id.

The Third Circuit has never adopted *either* version of false certification liability.  Id. at 303-04; Quinn, 382 F.3d at 441.  However, it has entertained claims based on false certification and found them otherwise deficient as pled, without articulating whether they were otherwise doomed absent the pleading failure.  See Rodriguez, 552 F.3d at 304; Quinn, 382 F.3d at 441-43; see also U.S. ex rel. Lobel v. Express Scripts, Inc., 351 Fed. Appx. 778, 779-80 (3d Cir. 2009).  In this context, a few basic elements for a false certification claim otherwise appear.  As to an express false certification claim, for example, the relator must identify *at least* a single claim submitted to the Government in which the entity represented that it complied with regulations that affect its eligibility for payment.  Lobel, 351 Fed. Appx. at 779 ("We reject [relator's] express certification claim out of hand.  His amended complaint fails to identify a single claim submitted by [defendant] in which it represented falsely to the Government that it complied with regulations that affect its eligibility for payment.  This is plainly insufficient under Rodriguez."); see also Conner, 543 F.3d at 1217 (noting that false statement for express false certification may appear in an invoice or other means).  As to an implied false certification claim, the Third Circuit has held that to state a claim "it is necessary to allege not only [1] a receipt of federal funds and [2] a failure to comply with applicable regulations, but also [3] that payment of the federal funds

was in some way conditioned on compliance with those regulations." Rodriguez, 552 F.3d at 304. The court expressed concern that absent the third element, the FCA would turn into "'a blunt instrument to enforce compliance with all . . . regulations' rather than "'only those regulations that are a precondition to payment.'" Id. (quoting U.S. ex rel. Mikes v. Straus, 274 F.3d 687, 699 (2d Cir. 2001)). In other words, the court held that a plaintiff must show that the alleged violation was "relevant" to "'the Government's disbursement decisions.'" Id. at 304 (quoting Quinn, 382 F.3d at 433 (quoting Mikes, 274 F.3d at 697)).

### 1. Express Certification

In their brief, Relators expressly limit their theory of liability to an express false certification claim. See Rel. br. at 15. However, at times, they seem to be also arguing an implied false certification theory, thus the Court will address both.[5] See Rel. br. at 18.

Relators' express certification claim is straightforward. They allege that because United Health entered into a contract expressly certifying that it agrees with all "terms and conditions of payment," they therefore made a false claim when they submitted claims despite any one of the eleven purported regulatory violations alleged in the Amended Complaint. Rel br. at 15 (citing 42 U.S.C. § 1395w-112(b)(1)). As with the last time counsel for Relators advanced a similar theory of liability in United States ex rel. Lobel v. Express Scripts, this present claim can be rejected "out of hand." 351 Fed. Appx. at 779. Not once in the Amended Complaint have Relators identified even a single claim for payment to the Government. See Def. br. at 6 ("Although the Complaint alleges that Defendants receive federal funds under their contracts

---

[5] Notwithstanding the Court's evaluation of each false certification theory, this Court does not decide whether the Third Circuit would actually adopt either. Even assuming false certification claims are legitimate, Relators' claims are otherwise deficiently pled.

with CMS, it does not describe any actual instances of false claims being submitted to the United States."). The absence of such an allegation is fatal to Relators' express false certification claim. While they maintain that they need not expressly show a specific single instance of a false claim being submitted, see Rel. br. at 28-32, that assertion is in discord with Rodriguez, Lobel, and indeed, common sense. Without an allegation of a claim, Relators' False *Claims* Act claim is like a battery without a touching, or defamation without a statement. Simply put, it is not a claim for relief. It is legally insufficient and cannot survive.

### 2. Implied Certification

Furthermore, to the extent that Relators attempted to state an implied false certification claim, that too must fail.[6] Relators' theory of liability at base is that because United Health agreed that it would comply with all CMS regulations when it contracted to become a PDP sponsor, and because at times it was in violation of some regulations (assumed true for purposes of the present Motion), it therefore committed fraud each time it submitted a claim for payment. As United Health appropriately describes this assertion, this is a "breathtakingly expansive view of liability." Def. reply at 3. For example, setting aside for the moment the utter lack of any allegation of a claim, Relators' theory confuses conditions of *participation* with conditions of *payment*. See Conner, 543 F.3d at 1220. While undoubtedly United Health must comply with all CMS regulations to become a PDP sponsor, and must continue to comply to maintain that status, not every condition is relevant to payment. Rodriguez, 552 F.3d at 304. If Relators' theory were right and every violation was actionable under the FCA, the FCA would become precisely the

---

[6] It should be noted at the outset that counsel for Relators is not unfamiliar with implied false certification claims, as he raised and lost on such a claim in both Rodriguez and Lobel. The same result is warranted here.

9

type of blunt instrument that the Third Circuit feared. Id.; see also Conner, 543 F.3d at 1221 (holding overly broad theory of liability under FCA would overtake Medicare regulatory program). The FCA is simply not designed "to reach each every kind of fraud practiced on the Government." U.S. v. McNinch, 356 U.S. 595, 599 (1958); Mikes, 274 F.3d at 698 (citing McNinch). If Relators' theory were correct, the FCA would become a federal tort fountain, flowing claims for every trivial violation of Medicare/Medicaid regulations. This is not the state of the law.

Moreover, Relators have not alleged that the violation of any regulation was actually relevant to a funding decision. For example, while they seemingly believe that United Health's marketing practices were illegal, they have not alleged (or even argued) why such actions as chasing people in the supermarket would be of concern to the Government. This is independently fatal to their claim. See Rodriguez, 552 F.3d at 304 (holding relators needed to "spell out" connection between alleged regulatory violation and receipt of Government funds); U.S. ex rel. Bauchwitz v. Holloman, 671 F. Supp. 2d 674, 691 (E.D. Pa. 2009) (holding false certification claim failed where relator failed to point to any specific regulation that was violated and how it was relevant to Government's decision).

### B. FERA

Relators attempt to breathe life into their FCA claims by alleging that the recently enacted Fraud Enforcement and Recovery Act of 2009 (FERA), Pub. L. No. 111-21, 123 Stat. 1617 (2009) makes stating a claim under § 3729(a)(1)(B) easier since it added a materiality requirement. Rel. br. at 20. Specifically they assert that under the FERA's change, a relator need only show whether compliance with regulations would have a tendency to influence the

Government's payment decision.  Rel. br. at 22-1-22.  The Court cannot agree.  Assuming that the amendments apply to this dispute, Relators must still show a *claim*.  They have not done so.  Further, Relators have not adequately explained why Congress's addition of a materiality requirement otherwise changes the Rodriguez standards and thus alleviates them of the obligation to show a connection between a given regulation and the Government's funding decision.  Therefore, even under the FCA as amended, they have not stated a viable claim.

### C. Anti-Kickback

Relators also attempt to allege a FCA claim on the basis of purported violations of the Anti-Kickback Act, 42 U.S.C. § 1320a-7b(b).  Specifically in the Amended Complaint, they alleged that AmeriChoice paid $27,000 to the Reliance Medical Group Clinic to induce them to change certain beneficiaries to AmeriChoice, and alleged that AmeriChoice of New Jersey used a form to entice doctors into receiving additional income in exchange the names of certain patients.  Amd. Compl. at ¶¶ 59-66.  While Relators acknowledge that the Anti-Kickback Act is a criminal statute, they assert that violations of it give rise to FCA liability, since violation of it is a violation of Medicare regulations.  Rel. br. at 24.  Relators' claim is seemingly a return to their theory that because United Health agreed to abide by all CMS regulations, it agreed to not violate the Anti-Kickback Act.  Among United Health's challenges to Relators' FCA claim based on a violation of the Anti-Kickback Act is that at no point does the Amended Complaint allege that United Health certified compliance or that payment was conditioned upon compliance.  Def. br. at 19.  The Court agrees.

Relators never once alleged that United Health certified compliance with the Anti-Kickback Act, nor did they allege that such compliance was relevant to the Government's

funding decisions (if indeed any were made, which Relators failed to allege).  While Relators' allegations are serious, they are required to "spell out" the connection between the alleged violations and a funding decision.  Rodriguez, 552 F.3d at 304.   Their failure to do so is fatal to their claim.

Therefore, the Court is compelled to grant the Motion to Dismiss as to the FCA claim in Count One.

### D.     State Law Claims

Because of the dismissal of the only federal claim in this dispute, the Court declines to exercise supplemental jurisdiction over the nine state law claims.  See 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over state law claims where court has dismissed only claim over which it has original jurisdiction).  Therefore, Counts Two through Ten are dismissed.

### E.     Leave to Amend

Finally, Relators' have somewhat haphazardly requested leave to amend, though what they wish to amend is unclear.  Specifically, they did not formally move to amend, but in their brief in opposition they stated as follows: "To the extent that the Complaint lacks pleading [sic] the specific statute, Plaintiff should be given leave to amend to clarify this deficiency."  Rel br. at 4.  Regardless of what Relators meant by this last statement, the Court will not grant leave to amend.  While generally leave to amend should be freely given, Fed. R. Civ. P. 15(a)(2), the Third Circuit requires that in a non-civil rights action a party requesting leave must submit a draft amended complaint for the court's review to determine if it is futile.  See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 252 (3d Cir. 2007).  When a party does not

properly request leave, the court need not grant it.  Id.  After entry of judgment, a party can seek leave to amend within the window supplied by Rule 59(e).  Id. at 253 (ten days at the time of Fletcher-Harlee, but now twenty-eight).  In this case, Relators have not properly requested leave to amend since they did not attach a proposed amended complaint.  Thus, leave to amend must be denied and this civil action is now at an end.

### IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** United Health's Motion to Dismiss as to the FCA claim in Count One.  The Court further declines to exercise jurisdiction over the remaining state law claims and they are therefore **DISMISSED**.  The Court **DENIES** leave to amend.  An appropriate Order shall follow.


Date:   5/13/10                                                                      /s/ Robert B. Kugler
                                                                                        ROBERT B. KUGLER
                                                                                        United States District Judge